IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

DEBRA KINES and STEVEN KINES,

    Plaintiffs,

v.                                                  No. 1:19-cv-01054-JDB-jay

FORD MOTOR COMPANY,

    Defendant.

ORDER GRANTING DEFENDANT'S MOTION FOR JUDGMENT ON THE
PLEADINGS ON THE ISSUE OF PUNITIVE DAMAGES

*INTRODUCTION AND BACKGROUND*

On or about August 8, 2018, the Plaintiffs, Debra Kines and Steven Kines, residents of Hardin County, Tennessee, were the owners of a 2018 Ford Explorer, designed and manufactured by Defendant, Ford Motor Company ("Ford"), whose principal place of business is located in Dearborn, Michigan. On that date, Debra Kines was attempting to change the position of a third-row passenger seat in order to store items in the vehicle's cargo area. According to the complaint, the Explorer has a spring-loaded bracket that engages with the folding load floor and allows the third-row passenger and driver's side seats to fold flat and return to an upright position. The bracket attaches to a molded plastic channel connected to the load floor. There is an opening in the channel that permits the arms of the bracket to disengage and come out of the channel. Plaintiffs allege that, as Ms. Kines attempted to adjust the seat, her pinkie finger inadvertently entered the unguarded pinch point of the bracket which unexpectedly released forward, closing the pinch point on her fingertip, nearly severing it.

Plaintiffs subsequently brought this action against Ford in the Circuit Court of Hardin County, Tennessee.[1] The matter was removed to this Court on March 21, 2019. (Docket Entry ("D.E.") 1.) In their fourth amended complaint filed February 26, 2020, in which they seek compensatory and punitive damages, the Kineses allege that the vehicle was in a defective and/or unreasonably dangerous condition at the time it left Ford's control and that Defendant unreasonably failed to warn them of the alleged hazard. (D.E. 99.) Pending before the Court is Ford's motion for judgment on the pleadings as to the punitive damages claim. (D.E. 108.) As the motion has been fully briefed, it is now ripe for disposition.

## STANDARD OF REVIEW

Motions for judgment on the pleadings are governed by Rule 12(c) of the Federal Rules of Civil Procedure, which permits a party to move for such relief after the pleadings are closed. Fed. R. Civ. P. 12(c). The same review standard is applied to these motions as to those filed under Fed. R. Civ. P. 12(b)(6). *Hindel v. Husted*, 875 F.3d 344, 346 (6th Cir. 2017). The Rule 12(b)(6) standard requires courts to "construe the complaint in the light most favorable to the plaintiff and accept all allegations as true to determine whether the complaint contains sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Jackson v. City of Cleveland*, 925 F.3d 793, 806 (6th Cir. 2019) (quoting *Doe v. Miami Univ.,* 882 F.3d 579, 588 (6th Cir. 2018)) (internal alterations and quotation marks omitted), *cert. denied*, 140 S. Ct. 855 (2020). In reviewing a motion under this standard, the court "may consider the complaint and any exhibits attached thereto, public

---

[1] Plaintiffs' initial complaint also named as a defendant Long-Lewis Ford Lincoln of Corinth Inc. ("Long-Lewis"), the Mississippi auto dealership from which they purchased the Explorer. In an order entered February 26, 2020, the Court dismissed the Kineses' claims against Long-Lewis without prejudice. (Docket Entry 97.)

records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims contained therein." *Kreipke v. Wayne State Univ.*, 807 F.3d 768, 774 (6th Cir. 2015) (quoting *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008)) (brackets and internal quotation marks omitted).

Plaintiffs have attached various documents to their response to the instant motion. These materials are neither referenced in the operative complaint nor central to the claims contained in the pleading. Fed. R. Civ. P. 12(d) provides that "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). "It is well-established that Rule 12(c) requires only one action by the district court for the conversion to a summary judgment motion to occur: failure to exclude presented outside evidence." *Northville Downs v. Granholm*, 622 F.3d 579, 585 (6th Cir. 2010) (quoting *Max Arnold & Sons, LLC v. W.L. Hailey & Co.*, 452 F.3d 494, 503 (6th Cir. 2006)) (internal quotation marks omitted). Neither party has requested that the Court convert the instant motion to one for summary judgment and, indeed, the Court declines to do so. Therefore, the documents submitted in support of Plaintiffs' response to the motion for judgment on the pleadings are excluded and the Court will not consider them in ruling on the motion.

## *DISCUSSION*

The Court has subject-matter jurisdiction over this action by virtue of the parties' diversity of citizenship and the amount in controversy, which exceeds $75,000. *See* 28 U.S.C. § 1332(a). In actions arising from diversity jurisdiction, courts are to apply the

choice-of-law rules of the forum state, including those involving tort claims.  *Sims Buick-GMC Truck, Inc. v. Gen. Motors LLC*, 876 F.3d 182, 185 (6th Cir. 2017), *reh'g denied* (Nov. 30, 2017); *EPAC Tech., Inc. v. Thomas Nelson, Inc.*, 438 F. Supp. 3d 847, 852 (M.D. Tenn. 2018), *aff'd*, 810 F. App'x 389 (6th Cir. 2020).

While the parties agree that issues of liability and compensatory damages are to be decided in accordance with the law of Tennessee, they are at odds as to what law should apply to Plaintiffs' punitive damages claim.  "The courts have long recognized that they are not bound to decide all issues under the local law of a single state."  Restatement (Second) of Conflict of Laws § 145 cmt. d (1971).  This is the "rule of dépeçage," from the French word meaning "dismemberment," a doctrine the courts of Tennessee have embraced.  *Croce v. Sanders*, ___ F. Supp. 3d ___, 2020 WL 2395568, at *25 (S.D. Ohio May 12, 2020), *appeal filed* (6th Cir. June 3, 2020) (No. 20-3577); *Peters v. O'Malley*, No. 2:13-00103, 2015 WL 13842094, at *3 (M.D. Tenn. Apr. 14, 2015).  Under the rule, "there is no inconsistency in applying the law of one state to a particular issue (such as compensatory claims) and the law of a different state to another issue (such as punitive damages claims)."  *Wahl v. Gen. Elec. Co.*, 983 F. Supp. 2d 937, 951 (M.D. Tenn. 2013), *aff'd*, 786 F.3d 491 (6th Cir. 2015).

In tort cases, "Tennessee follows the 'most significant relationship' approach of the Restatement (Second) of Conflict of Laws to choice-of-law questions."  *Montgomery v. Wyeth*, 580 F.3d 455, 459 (6th Cir. 2009) (citing *Hataway v. McKinley*, 830 S.W.2d 53, 59 (Tenn. 1992)); *Bass v. Kodirov*, Nos. 1:17-CV-108 REEVES/STEGER, 1:17-CV-69 REEVES/STEGER, 2019 WL 4601992, at *3 (E.D. Tenn. Sept. 23, 2019).  That is, "the law of the state where the injury occurred will be applied unless some other state has a more

significant relationship to the litigation." *Montgomery*, 580 F.3d at 459 (quoting *Hataway*, 830 S.W.2d at 59). "Tennessee adopted this position 'because generally the law of the state where the injury occurred will have the most significant relationship to the litigation.'" *Id.* (quoting *Hataway*, 830 S.W.2d at 59). "Thus, the most significant relationship 'provides a default rule whereby trial courts can apply the law of the place where the injury occurred when each state has an almost equal relationship to the litigation.'" *Id.* (quoting *Hataway*, 830 S.W.2d at 59) (some internal quotation marks omitted).

Ford argues that the conduct underlying the Kineses' punitive damages claim as articulated in the operative complaint -- the design of the Explorer -- occurred in Michigan and, accordingly, a Tennessee court would apply Michigan law to the claim rather than the law of Tennessee. Because Michigan does not permit an award of punitive damages, the argument goes, the Plaintiffs' demand for such damages must be dismissed. Plaintiffs, on the other hand, maintain that the issue should be governed by Tennessee law.

In determining which state has the most significant relationship, courts are to be guided by certain principles enumerated in the Restatement (Second) of Conflict of Laws § 6, identified in the tort context as

> the needs of the interstate and international systems, the relevant policies of the forum, the relevant policies of other interested states and particularly of the state with the dominant interest in the determination of the particular issue, and ease in the determination and application of the law to be applied.

Restatement (Second) of Conflict of Laws § 145 cmt. b (1971). "The purpose sought to be achieved by the relevant tort rules of the interested states . . . [is an] important factor[] to be considered in determining the state of most significant relationship." *Id.* cmt. c.

Contacts to be taken into consideration in applying these principles are (1) "the place of the injury," (2) "the place where the conduct causing the injury occurred," (3) "the place

5

of incorporation or place of business of the parties," and (4) "the place where the relationship is centered." *Town of Smyrna, Tenn. v. Mun. Gas Auth. of Ga.*, 723 F.3d 640, 646 n.3 (6th Cir. 2013) (citing *Hataway*, 830 S.W.2d at 59). The factors "are to be evaluated according to their relative importance to the issue presented." *McClendon v. N. C. Mut. Life Ins. Co.*, 406 F. Supp. 3d 677, 683 (M.D. Tenn. 2019) (citing Restatement (Second) of Conflict of Laws § 145 (1971)). Not all of the factors will be relevant in every case, as the Restatement test is a "fact-driven approach that necessarily varies from case to case." *MacDonald v. Gen. Motors Corp.*, 110 F.3d 337, 346 (6th Cir. 1997).

Before proceeding with the choice-of-law analysis, courts must address whether there is an actual conflict between the laws of the interested states with respect to punitive damages. *Hataway*, 830 S.W.2d at 55; *see also Insituform Tech., Inc. v. Per Aarsleff A/S*, 534 F. Supp. 2d 808, 812 (W.D. Tenn. 2008). "Where no actual conflict exists, the court may ignore choice of law questions and apply forum law." *Insituform Tech.*, 534 F. Supp. 2d at 812 (internal quotation marks omitted). Tennessee permits the award of punitive damages, *see Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 900-01 (Tenn. 1992), while Michigan does not, *see Womble v. Macomb Cty.*, Case No. 20-11494, 2020 WL 3542101, at *3 (E.D. Mich. June 30, 2020) (citing *Kewin v. Mass. Mut. Life Ins. Co.*, 295 S.W.2d 50, 55 (Mich. 1980)). Accordingly, a true conflict exists in this matter, and the Court must decide which state law applies. *See Cruz v. Ford Motor Co.*, 435 F. Supp. 2d 701, 704 (W.D. Tenn. 2006) (finding that actual conflict existed between the laws of Michigan and Tennessee with respect to punitive damages).

The choice-of-law analysis instructs the Court to next consider the "policies behind the laws of the interested states and the interests of those states in the claim" under

6

Restatement (Second) of Conflict of Laws § 6.  *MacDonald*, 110 F.3d at 343.  In *Hodges*, Tennessee's seminal case on punitive damages, the Tennessee Supreme Court explained that the purpose of punitive damages is to "punish the defendant and deter others from like offenses" and should be awarded only in cases involving the "most egregious of wrongs" if "defendant has acted either (1) intentionally, (2) fraudulently, (3) maliciously, or (4) recklessly."  *Hodges*, 833 S.W.2d at 900-01; *see also Becker v. Judd*, Case No. 2:08-0023, 2009 WL 10727984, at *1 (M.D. Tenn. Aug. 20, 2009).  In contrast, "Michigan has a predominant interest in protecting the financial integrity of corporations who conduct substantial business within its borders because this enables the citizenry to earn livelihoods." *In re Aircrash Disaster Near Monroe, Mich. on Jan. 9, 1997*, 20 F. Supp. 2d 1110, 1112 (E.D. Mich. 1998); *see also Gaillet v. Ford Motor Co.*, Case No. 16-13789, 2017 WL 1684639, at *6 (E.D. Mich. May 3, 2017).  Michigan's policy is to "protect[] domiciled producers from excessive financial liability."  *In re Disaster at Detroit Metro. Airport on Aug. 16, 1987*, 750 F. Supp. 793, 801 (E.D. Mich. 1989); *see also Gaillet*, 2017 WL 1684639, at *6.  "By protecting the economic health of companies that conduct business in Michigan, the state derives substantial revenues in sales and taxes, directly and indirectly, and furthers the economic well being of the entire state."  *In re Disaster at Detroit Metro. Airport on Aug. 16, 1987*, 750 F. Supp. at 801.  Accordingly, both states have an interest in the instant claim for punitive damages.  *See Cruz*, 435 F. Supp. 2d at 702-05 (noting that, in case seeking punitive damages for the alleged defective design of a Ford Explorer, Michigan, where the vehicle was designed, and Tennessee, where the plaintiffs injured during a rollover of the vehicle resided, both had an interest concerning the imposition of punitive damages).

Finally, the Court is to examine the contacts set forth in Restatement (Second) of Conflict of Laws § 145 and *Hataway* in light of the foregoing policy considerations. *See MacDonald*, 110 F.3d at 342. The Court finds that Michigan has the most significant relationship to the Plaintiffs' punitive damages claim. *Cruz*, a case from this district cited by the Defendant, is instructive. The plaintiffs therein, residents of Tennessee, were injured when the Ford Explorer in which they were travelling on a family trip in Mexico was involved in a single-vehicle rollover accident. *Cruz,* 435 F. Supp. 2d at 702. The plaintiffs brought an action against Ford, alleging that the Explorer had been defectively designed and that the carmaker had failed to warn them of the defective nature of the vehicle, and seeking punitive damages. *Id.* at 703. The court concluded that Michigan, as Ford's principal place of business and the place where the alleged misconduct -- the design of the vehicle -- occurred, had the most significant relationship to the issue of punitive damages, noting that "[w]hen the primary purpose of a rule of law is to deter or punish conduct, the States with the most significant interests are those in which the conduct occurred and in which the principal place of business and place of incorporation of defendant are located." *Id.* at 706-07 (quoting *Keene Corp. v. Ins. Co. of N. Am.*, 597 F. Supp. 934, 938 (D.D.C. 1984)); *see also Gaillet*, 2017 WL 1684639, at *1, 6 (holding that Michigan law applied to punitive damages claim against Ford arising from alleged wrongful design of a vehicle that caused injury in Mississippi, citing *Cruz*, and noting that "a state's interest in punishing a defendant and deterring future misconduct is far lesser where . . . the defendant is non-resident").

With respect to other factors, the *Cruz* court determined that the state of a plaintiff's domicile does not have a significant interest in imposing its law on punitive damages. *Cruz*, 435 F. Supp. 2d at 705-06. The court explained:

> The legitimate interests of these states [of the plaintiffs' domicile], after all, are limited to assuring that the plaintiffs are adequately compensated for their injuries and that the proceeds of any award are distributed to the appropriate beneficiaries. Those interests are fully served by applying the law of the plaintiffs' domiciles as to issues involving the measure of compensatory damages (insofar as that law would enhance the plaintiffs' recovery) and the distribution of any award. Once the plaintiffs are made whole by recovery of the full measure of compensatory damages to which they are entitled under the law of their domiciles, the interests of those states are satisfied.

*Id.* at 705 (quoting *In re Air Crash Disaster Near Chicago, Ill. on May 25, 1979*, 644 F.2d 594, 613 (7th Cir. 1981)); *see also Williams v. Novartis Pharm. Corp.*, 15 F. Supp. 3d 761, 766 (S.D. Ohio 2014) (under the most significant relationship test, "[t]he State of domicile of plaintiff has no interest in imposing punitive damages," quoting *Keene Corp.*, 597 F. Supp. at 938-39).

The *Cruz* court further concluded that

> the place where the relationship is centered would seem to have a low interest in either punishment or protection merely because the parties' relationship was centered within its borders. The alleged egregious acts would not have occurred there; thus, the state would have a low interest in controlling nonresident corporate behavior. Also, because the corporations were not located in that state, it would have a low interest in the protection of nonresident defendants.

*Cruz*, 435 F. Supp. 2d at 707-08 (quoting *In re Air Crash Disaster Near Chicago, Ill. on May 25, 1979*, 644 F.2d at 612 n.20); *see also Williams*, 15 F. Supp. 3d at 766 ("The place where the injury occurred and where the parties' relationship is centered do not claim as great an interest in the punitive damages issue as in other tort-related issues," quoting *Keene Corp.*, 597 F. Supp. at 938-39).

In what appears to the Court to be an attempt to distance themselves from the holding in *Cruz*, the Plaintiffs insist that the conduct causing the injury -- the second Restatement factor found to be significant by the *Cruz* court -- consisted not of design decisions made in

9

Michigan but of discovery abuses engaged in by Ford over the course of this litigation. Specifically, they aver that the "[t]he thrust of [their] claims for punitive damages in this case . . . stems from Defendant Ford's post-suit actions most of which took place in the State of Tennessee." (D.E. 112 at PageID 1145.) These post-suit actions are identified as instances during discovery where Ford, in Plaintiffs' view, failed to produce various warranty claims and design drawings pertaining to the Explorer, failed to properly respond to deposition questions relative to discoverable materials, and failed to produce document attachments. As this "cover-up" and wrongdoing by Ford during the discovery process occurred in Tennessee, the Kineses argue, the conduct causing the injury occurred in Tennessee, whose law should apply. (*Id.* at PageID 1147.)

Plaintiffs cite to the Tennessee Supreme Court's decision in *Metcalfe v. Waters*, 970 S.W.2d 448 (Tenn. 1998), as evidence that punitive damages are available in Tennessee for post-suit concealment of wrongdoing. In *Metcalfe*. the plaintiff hired an attorney, Larry Waters, to represent her and family members in connection with a car accident in which she was injured. *Metcalfe*, 970 S.W.2d at 449. The complaint was nonsuited by Waters because he was not prepared on the day of trial. *Id.* The complaint was refiled, but Waters failed to pay the filing fee or properly issue summons. *Id.* The court dismissed some of the defendants on statute of limitations grounds and the remainder when Waters failed to appear for trial. *Id.* Counsel lied to his clients about the status of the case for several months and, when he finally advised them of the dismissal, he neglected to tell them the reason for the dismissal, saying only that the case was not worth appealing. *Id.* at 449-50.

In a subsequent legal malpractice suit filed by Metcalfe, Waters admitted to failing to apprise his clients of the status of the case, failing to adequately prepare for trial, failing

to refile the suit properly after taking a nonsuit, failing to file summons properly, failing to appear the second time the case was set for trial, and failing to file an appeal. *Id.* at 450. He acknowledged that his failure to inform Metcalfe of the dismissal was an intentional, fraudulent, malicious, or reckless effort to conceal his mistakes, but argued that punitive damages were unwarranted. *Id.* The Tennessee Supreme Court held that punitive damages may be awarded in legal malpractice actions and noted that Tennessee law did not preclude the consideration of a defendant's concealment of wrongdoing in determining liability for such damages. *Id.* at 452.

Assuming *Metcalfe* stands for the proposition that punitive damages may be awarded in Tennessee for post-suit discovery abuses,[2] the Court is unpersuaded that whatever wrongful actions may have been taken by Ford during discovery tip the scale in Plaintiffs' favor.[3] The Restatement and *Hataway* require the Court to consider the place *where the conduct causing the injury occurred*. The conduct and injury complained of in the operative pleading is unquestionably the design of the Explorer part that led to the laceration of Ms.

---

[2]Ford argues that the *Metcalfe* holding is limited to the legal malpractice context. However, the Tennessee Court of Appeals' decision in *Upshaw v. Sunrise Community of Tennessee, Inc.*, No. E2016-01005-COA-R3-CV, 2017 WL 3525368 (Tenn. Ct. App. Aug. 16, 2017), casts some doubt on this contention. In that case, the state appellate court noted in a retaliatory discharge action that "the employer's later failure to produce the documents until very late in discovery was relevant evidence from which the jury could conclude that the defendant's conduct was egregious" for purposes of punitive damages and that "consideration of [defendant]'s efforts to conceal Upshaw's internal reporting of H.G.'s overfeeding from the DIDD investigator *and during discovery in these proceedings* is consistent with the purposes of punitive damages," citing *Metcalfe*. *Upshaw*, 2017 WL 3525368, at *11 (emphasis added).

[3]It is worth noting here that Plaintiffs have never sought relief from the Court against the Defendant under Fed. R. Civ. P. 37, which sets forth sanctions for failures to cooperate in discovery. Even if they had, an award of punitive damages is not one of the sanctions enumerated under the rule.

Kines' pinkie finger.[4]  There is no mention in the complaint of discovery abuses.[5]  *See Zieger v. Carl Zeiss Vision, Inc.*, Civil Action No. 18-198-DLB-CJS, 2019 WL 8953356, at *3 (E.D. Ky. Oct. 31, 2019) ("a plaintiff cannot raise new claims for the first time in a response to a motion to dismiss"), *report and recommendation adopted*, 2020 WL 1317477 (E.D. Ky. Mar. 20, 2020).  Moreover, Plaintiffs have cited to no caselaw indicating that alleged post-suit discovery abuses are relevant to the inquiry currently before the Court.  The Court is simply unconvinced that conduct and injury not alleged in the complaint are sufficient to support a finding that the place of the conduct causing the injury was Tennessee for purposes of determining which state's law should be applied.[6]

---

[4]The fourth amended complaint alleges as follows:

> Plaintiffs further submit that the acts and omissions of Defendant Ford as set forth more fully above demonstrate that such actions and omissions were fraudulent, intentional, reckless, malicious, wanton, willful, and/or indicate such a lack of care that they warrant the imposition of punitive damages in this case in an amount to be set by a jury necessary to punish and deter said Defendant and others, considering all reasonable factors under Tennessee law.

(D.E. 99 ¶ 42.)  The acts and omissions set forth in the pleading consist of Ford's alleged failure to properly design and manufacture the Explorer or to warn customers of a defect.

[5]In the concluding paragraph of their responsive brief, Plaintiffs state:  "If, however, the Court determines that Plaintiffs' Fourth Amended Complaint is not sufficiently well-plead as relates to punitive damages, Plaintiffs request that the Court allow Plaintiff[s] leave to amend their Fourth Amended Complaint to further support and clarify their punitive damages claims."  (D.E. 112 at PageID 1150.)  The Court will not grant such relief in the form in which it has been sought.  Requests for leave to amend under Rule 15 are governed by Fed. R. Civ. P. 7(b), which requires a motion that "state[s] with particularity the grounds for seeking [a court] order."  *Evans v. Pearson Enter., Inc.*, 434 F.3d 839, 853 (6th Cir. 2006) (quoting Fed. R. Civ. P. 7(b)).  Where plaintiffs, in a response to a dispositive motion, request leave to amend their complaint "in a single sentence without providing grounds or a proposed amended complaint to support [their] request," as is the case here, such plaintiffs "[do] not state the grounds with particularity."  *See id.*

[6]In going down this road, the Plaintiffs have utterly failed to respond to Ford's

12

Upon consideration of the relevant policies and contacts, this Court finds the reasoning in *Cruz* to be sound and adopts it here.  Accordingly, as the design of the Explorer at issue, which pursuant to the operative complaint constituted the conduct causing the injury to Ms. Kines' finger, occurred in Michigan and Ford's principal place of business is in Michigan, the most significant relationship with respect to punitive damages lies with that state.  The remaining factors are of lesser interest in the punitive damages context and do not override Michigan's interest.

Based on the Court's conclusion that Michigan law applies to Plaintiffs' punitive damages claim, the claim is DISMISSED on the grounds that it is prohibited by Michigan law.[7]  The Defendant's motion is GRANTED.

IT IS SO ORDERED this 16th day of September 2020.

                         s/ J. DANIEL BREEN
                         UNITED STATES DISTRICT JUDGE

---

argument concerning a punitive damages claim based on alleged conduct in designing the Explorer that caused the injury to Ms. Kines' finger (as opposed to discovery abuses).  Thus, the Court has little choice but to conclude that, by not addressing any such claim in their response to the Defendant's dispositive motion, Plaintiffs have abandoned it. *See Doe v. Bredesen*, 507 F.3d 998, 1007-08 (6th Cir. 2007) (agreeing with the district court's assessment that plaintiff had abandoned claims by failing to address them in his brief opposing defendant's motion to dismiss the complaint).

[7]In light of the Court's ruling, it need not address Ford's alternative argument that the operative pleading fails to state a claim for punitive damages under Tennessee law.