IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

DEBRA KINES and STEVEN KINES,

    Plaintiffs,

v.                                                                                                        No. 1:19-cv-01054-JDB-jay

FORD MOTOR COMPANY,

    Defendant.

_____

ORDER DENYING PLAINTIFFS' MOTION TO DENY DEFENDANT'S REQUEST FOR
REDACTION OF TRIAL TRANSCRIPTS,
GRANTING DEFENDANT'S MOTION TO SEAL PLAINTIFFS' PROPOSED FINDINGS OF
FACT AND CONCLUSIONS OF LAW, AND
GRANTING DEFENDANT'S MOTION TO SEAL PLAINTIFFS' RESPONSE TO ITS
MOTION TO SEAL PLAINTIFFS' PROPOSED FINDINGS OF FACT AND CONCLUSIONS
OF LAW
_____

In this product liability action, the Plaintiffs, Debra Kines and Steven Kines, contend that Mrs. Kines was injured by certain components of her 2018 Ford Explorer, designed and manufactured by Defendant, Ford Motor Company ("Ford"), when she attempted to adjust the third row seat's position. (Docket Entry ("D.E.") 140 at PageID 1651-52.) A bench trial was held on November 2 and 3, 2020. (D.E. 157-58.) Transcripts of the proceedings, one for each day of the trial, were placed on the Court's digital docket. (D.E. 160-61.) Pursuant to § 7.5 of the Court's ECF Policies and Procedures (the "Policies"), Ford filed, on December 30, 2020, a notice of intent to request redaction of certain testimony from the trial transcripts (D.E. 164) and, on January 15, 2021, its request for such redaction (D.E. 167). The parties' proposed findings of fact and conclusions of law were filed on January 27 and 28, 2021. (D.E. 168-69.) On January 29, 2021, Plaintiffs moved to deny a portion of the redaction request. (D.E. 171.) In an order entered March

10, 2021, the Court placed the transcripts under seal pending a ruling on the requested redaction. (D.E. 180.) Also pending before the Court are Ford's motions to seal Plaintiffs' proposed findings of fact and conclusions of law (D.E. 172) and Plaintiffs' response to D.E. 172 (D.E. 178). As the briefing is complete as to all three motions, they are ripe for review.

Defendant's Request for Redaction (D.E. 167) and Plaintiffs' Motion to Deny Request (D.E. 171).

Before diving into the substantive questions raised in these filings, the Court will address the procedural issues identified in the parties' briefs. Ford complains that Plaintiffs' motion to deny redaction is "procedurally improper" on the grounds that neither the local rules nor the Policies permit a motion to deny a redaction request. (D.E. 173 at PageID 2337.) However, court rules and policies cannot anticipate every type of request for relief and Defendant does not suggest Plaintiffs have no mechanism by which to challenge its redaction request. This argument is without merit.

Defendant further points out—correctly—that the Kineses failed to comply with the local rules' requirement that motions be accompanied by a certificate of consultation. *See* LR 7.2(a)(1)(B). While "[f]ailure to attach an accompanying certificate of consultation may be deemed good grounds for denying the motion," *id.*, in the interest of judicial economy, the Court will not deny Plaintiffs' motion on that basis. That said, Plaintiffs' counsel has practiced in this Court long enough to be familiar with the local rules and to know the Court expects them to be followed. Any future filings violative of the applicable rules may be stricken from the docket.

Plaintiffs submit that Defendant has waived any claim for redaction under the parties' Agreed Protective Order (the "APO") entered during the discovery phase of this case. (*See* D.E. 54.) In its request, Ford stated that the confidential business information for which it sought redaction "was produced pursuant to the [APO]." (D.E. 167 at PageID 2220.) The Kineses insist

2

that the APO did not follow information all the way to trial and, even if it did, Defendant waived its right to seek redaction of trial testimony pursuant to its protections by failing to seek such relief within the time period set forth in the APO. However, the Court does not read Defendant's request as relying on the APO as the basis for redaction of the trial record and, judging from Ford's response to the Plaintiffs' motion, it did not intend to do so. Thus, the parties appear to be in agreement that the APO does not govern redaction of the trial transcript. Upon review of the APO, the Court concurs. Accordingly, the Plaintiffs' waiver argument with respect to the APO fails.

Now, to the merits. Ford's request for redaction addresses two categories of testimony—personal identifiers in the form of Mrs. Kines' date of birth at Page 124 Line 2 of the November 2, 2020, transcript and certain testimony, referenced in the request by page and line number, that Defendant claims constitutes confidential business information. Plaintiffs have moved to deny only the second request. In response to the motion, Ford has identified three specific categories of confidential business information testimony of which it seeks redaction: (1) discussion of testing methodologies in its System Design Specification ("SDS") for Seat Systems, entered at trial as Exhibit Number 26; (2) part cost and engineering change information contained in product change notices from its Worldwide Engineering Release System ("WERS"); and (3) discussion of and quotation from an engineering document known as a Design Failure Mode and Effects Analysis ("DFMEA"). This information, Ford claims, constitutes trade secrets for which redaction is appropriate.

There is a "long-established legal tradition [of] the presumptive right of the public to inspect and copy judicial documents and files." *In re Knoxville News-Sentinel Co., Inc.*, 723 F.2d 470, 474 (6th Cir. 1983)). The public's interest

> rests on several grounds. Sometimes, the public's interest is focused primarily upon the litigation's result—whether a right does or does not exist, or a statute is or is

3

>not constitutional. In other cases the public's interest is focused not only on the result, but also on the conduct giving rise to the case. In those cases, secrecy insulates the participants, masking impropriety, obscuring incompetence, and concealing corruption. And in any of these cases, the public is entitled to assess for itself the merits of judicial decisions. Thus, the public has an interest in ascertaining what evidence and records the [courts] have relied upon in reaching [their] decisions.

*Shane Grp., Inc. v. Blue Cross Blue Shield of Michigan*, 825 F.3d 299, 305 (6th Cir. 2016) (brackets and internal citations and quotation marks omitted). The presumptive right of openness is not unbounded, however. *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978). It cannot be "used to gratify private spite or promote public scandal" or as a "source[] of business information that might harm a litigant's competitive standing." *Id.*

"The party seeking to seal a record carries the burden of overcoming [the] presumption and only the most compelling reasons can justify nondisclosure of judicial records." *Lipman v. Budish*, 974 F.3d 726, 753 (6th Cir. 2020) (citing *Shane Grp.*, 825 F.3d at 305; *Knoxville News-Sentinel*, 723 F.2d at 476) (brackets and internal citation and quotation marks omitted), *reh'g en banc denied* (Oct. 7, 2020). "[E]ven where a party can show a compelling reason why certain documents or portions thereof should be sealed, the seal itself must be narrowly tailored to serve that reason." *Shane Grp.*, 825 F.3d at 305. "The proponent of sealing therefore must analyze in detail, document by document, the propriety of secrecy, providing reasons and legal citations," and demonstrate that "disclosure will work a clearly defined and serious injury." *Id.* at 305-07 (quoting *Baxter Int'l, Inc. v. Abbott Labs.*, 297 F.3d 544, 548 (7th Cir. 2002); *In re Cendant Corp.*, 260 F.3d 183, 194 (3d Cir. 2001)) (internal quotation marks omitted).

In making its determination, the district court must take care not to conflate the standard for entering a protective order governing discovery pursuant to Rule 26 of the Federal Rules of Civil Procedure, at a stage of the proceedings "before the material enters the judicial record" where

4

"[s]ecrecy is fine," and the "very different considerations" that apply at the adjudication stage. *Id.* at 305 (quoting *Baxter*, 297 F.3d at 545; *Joy v. North*, 692 F.2d 880, 893 (2d Cir. 1982)). "The line between these two stages, discovery and adjudicative, is crossed when the parties place material in the court record." *Id.*

"[I]n civil litigation, only trade secrets, information covered by a recognized privilege (such as the attorney-client privilege), and information required by statute to be maintained in confidence (such as the name of a minor victim of a sexual assault), [are] typically enough to overcome the presumption of access" at the adjudication stage. *Id.* at 308 (quoting *Baxter*, 297 F.3d at 546) (internal quotation marks omitted). As noted above, the Defendant argues that the information it seeks to redact constitutes trade secrets.

The term "trade secret" has both common-law and statutory definitions in Tennessee. The relevant statute provides that the term

> means information, without regard to form, including, but not limited to, technical, nontechnical or financial data, a formula, pattern, compilation, program, device, method, technique, process, or plan that:
>
> (A) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use; and
>
> (B) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Tenn. Code Ann. § 47-25-1702(4). Under the common law, "a trade secret was defined as 'any formula, process, pattern, device or compilation of information that is used in one's business and which gives him an opportunity to obtain an advantage over competitors who do not use it.'" *Hamilton-Ryker Grp., LLC v. Keymon*, No. W2008-00936-COA-R3-CV, 2010 WL 323057, at *13 (Tenn. Ct. App. Jan. 28, 2010) (citing *Wright Med. Tech., Inc. v. Grisoni*, 135 S.W.3d 561, 588

(Tenn. Ct. App. 2001)).  Courts have identified factors to be considered in determining whether a trade secret exists:

> (1) the extent to which the information is known outside of the business; (2) the extent to which it is known by employees and others involved in the business; (3) the extent of measures taken by the business to guard the secrecy of the information; (4) the value of the information to the business and to its competitors; (5) the amount of money or efforts expended by the business in developing the information; [and] (6) the ease or difficulty with which the information could be properly acquired or duplicated by others.

*Cardinal Health 414, Inc. v. Adams*, 582 F. Supp. 2d 967, 983 (M.D. Tenn. 2008) (citing *Wright Med. Tech.,* 135 S.W.3d at 589).

Ford has proffered the declaration of Jennifer Buckman, a design analysis engineer employed by the company, in support of its claim that the testimony sought to be redacted constitutes trade secrets.  (D.E. 172-1 ¶ 2.)  Therein, she describes Defendant's Seat SDSs as "proprietary Ford design, development, and testing specifications related to vehicle seat assemblies," containing information relevant to the "design requirements, testing, and verification methods" for those assemblies.  (*Id.* ¶ 7.)  Ford, she states, "is an industry leader in seat design research and test methodologies."  (*Id.*)  Trial testimony with respect to the SDS, she relates, pertaining to seat system handling specifications, specifications of the fold and tumble/kneel function seat life cycle, and specifications of the load floor/seat strength, reflects Defendant's "motives, goals, and strategies" for seat design and development.  (*Id.* ¶ 8.)  Buckman avers that the DFMEA "contains design actions, specifications, and requirements to prevent or control any foreseeable potential design failures of a component part and is highly sensitive to Ford."  (*Id.* ¶ 9.)  According to the declarant, the WERS encompasses the "design history and costs of component parts and tracks any approved changes to those parts."  (*Id.* ¶ 10.)  Its change notices "provide notification within Ford of any approved changes to component parts."  (*Id.*)  Trial

testimony, she asserts, relative to "design changes and cost of a component part is not publicly available information, and disclosure thereof could provide Ford's competitors with economic or business advantages by allowing them to streamline their processes." (*Id.*)

Buckman explains that the contents of these documents "are the result of years of detailed engineering analyses, development of testing methodology, and benchmarking"; are "unique to Ford"; were years in the making; and were "developed at great expense." (*Id.* ¶ 11.) They are utilized in Ford's business of designing and manufacturing vehicles and provides Defendant "with an advantage in that market over anyone who does not have such information." (*Id.* ¶ 12.) She insists that "Ford takes great care to protect the dissemination of this sensitive engineering, design, and testing information because of the highly competitive nature of the automotive industry, and being first to market with a new concept, feature, or performance capability can confer a distinct competitive advantage to an automotive manufacturer, translatable into increased market share." (*Id.*) To her knowledge, this information has not been released to the public and is not shared outside Ford's business. (*Id.* ¶¶ 5, 13.) It has been only disseminated or accessible internally "to employees who are either directly involved with seat design and testing, or those who have a need to know." (*Id.* ¶ 13.) Suppliers are bound by confidentiality agreements and "are only provided the specific parts of these protected documents needed to manufacture the components they supply." (*Id.*) She advises that, if such data did become publicly available, Defendant's competitive position in the marketplace would suffer harm, as others would be able to make use of Ford's research, testing, and developmental costs to quickly and cheaply market similar designs. (*Id.* ¶ 14.)

Plaintiffs argue in their motion that Ford's attempt to carry its burden on this issue amounts only to "vague generalities." (D.E. 171-1 at PageID 2312.) The Court disagrees. Buckman has

7

set forth in her declaration, under penalty of perjury, the clearly defined and serious injury her employer would face should its trade secrets be publicly disseminated and specifically addresses the factors articulated by Tennessee law for determining whether information should be considered a trade secret. Based on the declaration and the arguments of counsel, the Court finds that the information sought to be redacted from the trial transcript constitutes trade secrets under Tennessee law and, thus, that the presumption of access has been overcome. *Compare Brown & Williamson Tobacco Corp. v. Fed. Trade Comm'n*, 710 F.2d 1165, 1180 (6th Cir. 1983) ("a court should not seal records unless public access would reveal legitimate trade secrets, a recognized exception to the right of public access to judicial records") *with Shane Grp.*, 825 F.3d at 302, 307-08 (in class action suit alleging insurer engaged in price-fixing, protection of "financial and negotiating information," which the parties did not contend was a trade secret, was an insufficient basis for sealing court records).

Further, upon review of the proposed redactions, the Court finds them to be narrowly tailored. Although Plaintiffs complain that the portions of the transcript for which Ford seeks redaction cover some thirty pages of testimony,[1] the proposed redactions on many of those pages amount to only a few words and are limited to trade secret information as described in Buckman's declaration.

Based on the foregoing, the Plaintiffs' motion to deny the redactions sought by Defendant is DENIED. The trial transcripts shall be redacted pursuant to D.E. 167. The Clerk is DIRECTED to forward a copy of this order to the Court Reporter.

---

[1] The transcripts run a total of 439 pages in length.

Defendant's Motion to Seal Plaintiffs' Proposed Findings of Fact and Conclusions of Law (D.E. 172).

Ford argues in this motion that Paragraphs 25, 30, and 36 of Plaintiffs' proposed findings of fact and conclusions of law (D.E. 168) contain trade secrets and, therefore, the document should be sealed. Paragraph 25 consists of quoted material from the SDS read aloud in court by Buckman during her testimony. Paragraph 30 references trial testimony of Buckman relating to part cost information from a product change notice. In Paragraph 36, Plaintiffs cite to certain portions of Buckman's trial testimony that pertain to contents of the DFMEA. The information included in these paragraphs is the same as that determined to be trade secrets in the previous section of this order.

Plaintiffs contend that, even if the information sought to be redacted constitutes trade secrets, any protection was waived by the presentation of the evidence in open court without any attempt by Ford's counsel to prevent the information from entering the judicial record or the public domain.[2] In doing so, the Kineses cite to various cases outside this circuit, which of course have no precedential value here.[3] One of the referenced cases, however, cites to the Sixth Circuit case of *National Polymer Products v. Borg-Warner Corp.*, 641 F.2d 418 (6th Cir. 1981), for the proposition that "[i]t is a 'well-established principle of American jurisprudence that the release of information in open trial is a publication of that information and, if no effort is made to limit its disclosure, operates as a waiver of any rights a party had to restrict its further use.'" *Glaxo Inc. v.*

---

[2]This assertion was not specifically made in Plaintiffs' motion to deny Ford's request to redact the trial transcripts.

[3]Plaintiffs also cite to a ruling purportedly by the Sixth Circuit in *State ex rel. Rea v. Ohio Department of Education*, 692 N.E. 2d 596 (1998). However, the case was decided by the Supreme Court of Ohio, not the Sixth Circuit, and addressed trade secrets under Ohio law.

*Novopharm Ltd.*, 931 F. Supp. 1280, 1301 (E.D.N.C. 1996) (quoting *Nat'l Polymer Prod.*, 641 F.2d at 421).

*National Polymer* involved a claim for damages arising from the sale of a product supplied by Borg-Warner to National Polymer. *Nat'l Polymer Prod.*, 641 F.2d at 420. A jury trial was held in open court and attended by the general public and the press. *Id.* at 420-21. At no time during the trial did Borg-Warner move for any restriction on the exposure of others to evidence presented in the case. *Id.* The question before the Sixth Circuit concerned whether the trial judge could restrict, in the form of an injunction, post-trial disclosure of certain business-related information presented during the trial. *Id.* at 421-22. The appellate court began its discussion with the quote cited in *Glaxo*. *Id.* It went on to state, however, that the propriety of the injunction as to matters publicly revealed at trial rested on the outcome of a balancing process in which the presumption of access was weighed against the interest in preserving the confidentiality of the material, including whether disclosure would impair Borg-Warner's legitimate business interests. *Id.* at 424. The Court finds nothing in *National Polymer* that requires it to deny redaction just because the courtroom was not closed or the evidence presented at trial was not otherwise sealed at the time.

While Defendant's lawyer certainly could have requested that the courtroom be closed, it appears from the statements of counsel at the time of trial that the few spectators in the courtroom were experts, witnesses, and employees/associates of counsel's law firms. In their briefing, Plaintiffs insist there was one true bystander present in the courtroom during the testimony of at least two witnesses, one of whom was Don Phillips, who offered testimony concerning the WERS and the DFMEA. Ford vehemently disputes this claim and the Court, for its part, does not recall the presence of an unknown spectator. In any case, the redactions sought by Ford relate to the

10

testimony of Buckman, not Phillips.[4]  As the Plaintiffs do not assert that this alleged bystander witnessed Buckman's testimony, and considering the overriding interest in protecting trade secrets as discussed herein, their argument is unpersuasive.  Defendant's motion, which the Court finds to be well-taken, is GRANTED.  The Clerk is DIRECTED to immediately place D.E. 168 under seal.  Plaintiffs are ORDERED to file a redacted version of their proposed findings of fact and conclusions of law within five days of the entry of this order.

<u>Defendant's Motion to Seal Plaintiffs' Response to Its Motion to Seal Plaintiffs' Proposed Findings of Fact and Conclusions of Law (D.E. 178).</u>

In this motion, Ford seeks an order sealing Plaintiffs' response to its motion to seal the Kineses' proposed findings of fact and conclusions of law (D.E. 174) as it contains approximately four lines that quote the SDS.  At the outset, the Court notes that it would have been helpful if Defendant's counsel had identified the page number(s) upon which the objectionable four lines appear.  The Court will assume Ford is referring to the quoted SDS language on pages three and four of Plaintiffs' response (the same language that is quoted in Paragraph 25 of D.E. 168).  For the reasons articulated in the preceding section hereof relating to the SDS, the motion is GRANTED.

The Clerk is DIRECTED to immediately seal D.E. 174.  Plaintiffs are ORDERED to file a redacted version of the response within five days of the entry of this order.

IT IS SO ORDERED this 9th day of April 2021.

              s/ J. DANIEL BREEN
              UNITED STATES DISTRICT JUDGE

---

[4] In Paragraph 25, Plaintiffs attribute the reading at trial from the SDS to Phillips, citing to Page 239, Lines 9-24 of the trial transcript.  (*See* D.E. 168 at PageID 2230.)  However, the quoted testimony which appears at the cited page and lines is that of Buckman.  (*See* D.E. 160 at PageID 2003-10.)